UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ROBERT CARLISLE, individually and as a representative of a class of similarly situated persons, on behalf of the NEW YORK STATE TEAMSTERS CONFERENCE PENSION AND RETIREMENT FUND,

       Plaintiff,

v.

THE BOARD OF TRUSTEES OF THE AMERICAN FEDERATION OF THE NEW YORK STATE TEAMSTERS CONFERENCE PENSION AND RETIREMENT FUND; JOHN BULGARO; BRIAN K. HAMMOND; PAUL A. MARKWITZ; GEORGE F. HARRIGAN; MARK D. MAY; MICHAEL S. SCALZO, SR.; ROBERT SCHAEFFER; MARK GLADFELTER; SAMUEL D. PILGER; DANIEL W. SCHMIDT; TOM J. VENTURA; MEKETA INVESTMENT GROUP, INC.; and HORIZON ACTUARIAL SERVICES, LLC,

       Defendants.

8:21-cv-00455 (BKS/DJS)

---

**Appearances:**

*For Plaintiff*:
Steven A. Schwartz
Chimicles Schwartz Kriner & Donaldson-Smith LLP
361 West Lancaster Avenue
Haverford, Pennsylvania 19041

Robert J. Kriner, Jr.
Emily L. Skaug
Chimicles Schwartz Kriner & Donaldson-Smith LLP
2711 Centerville Road, Suite 201
Wilmington, Delaware 19808

Leslie A. Blau
Blau & Malmfeldt
566 West Adams Street, Suite 600
Chicago, Illinois 60661

*For Defendants: The Board of Trustees of the American Federation of the New York State Teamsters Conference Pension and Retirement Fund; John Bulgaro; Brian K. Hammond; Paul A. Markwitz; George F. Harrigan; Mark D. May; Michael S. Scalzo, Sr.; Robert Schaeffer; Mark Gladfelter; Samuel D. Pilger; Daniel W. Schmidt; and Tom J. Ventura:*
Brian T. Ortelere
Sara E. DeStefano
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178

Bernard T. King
Brian J. LaClair
Blitman & King LLP
443 North Franklin Street
Syracuse, New York 13204

*For Defendant Meketa Investment Group, Inc.:*
Diana K. Lloyd
Samuel N. Rudman
Preston F. Bruno
Choate, Hall & Stewart
Two International Place
Boston, Massachusetts 02110

Eric G. Serron
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036

*For Defendant Horizon Actuarial Services, LLC:*
Edward J. Meehan
Stephen M. Saxon
Samuel I. Levin
Kalena R. Kettering
Groom Law Group, Chartered
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006

**Hon. Brenda K. Sannes, United States District Judge:**

MEMORANDUM-DECISION AND ORDER

**I.      INTRODUCTION**

Plaintiff Robert Carlisle, brings this proposed class action individually and as a representative of a class of similarly situated persons, on behalf of the New York State Teamsters Conference Pension and Retirement Fund, under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., alleging breach of fiduciary duty in violation of ERISA §§ 404(a)(1)(A)–(D), 29 U.S.C. § 1104(a)(1)(A)–(D) and ERISA §§ 405(a)(1) and (2), 29 U.S.C. § 1105(a)(1) and (2). (*See generally* Dkt. No. 1).[1] Plaintiff names as Defendants the Board of Trustees of the New York State Teamsters Conference Pension and Retirement Fund (the "Fund"), four current Union Trustees, four current Employer Trustees, and three former Trustees (collectively the "Fund Defendants"). (Dkt. No. 1, ¶ 20). Plaintiff also names as Defendants Mekata Investment Group, Inc. ("Mekata"), which provided investment consulting services and investment management services to the Fund Defendants, and Horizon Actuarial Services, LLC ("Horizon"), which provided actuarial services to the Fund Defendants. (Dkt. No. 1, ¶¶ 21–22). Presently before the Court is the Fund Defendants' motion to stay proceedings pending the determination of the Fund Defendants' application for Special Financial Assistance with the Pension Benefit Guaranty Corporation ("PBGC") pursuant to the American Rescue Plan Act of 2021 ("ARPA"), H.R. 1319, 117th Cong. § 4262 (2021). (Dkt. Nos. 122, 163). Mekata has joined the motion to stay, (Dkt. No. 125-1, at 10 n.2); Horizon does not oppose the motion to stay but seeks a ruling on its pending motion to dismiss, (Dkt. No. 102), prior to resolution of the

---

[1] Plaintiff seeks to represent the following class: "All participants and beneficiaries of the New York State Teamsters Conference Pension and Retirement Fund through the date of judgment." (Dkt. No. 1, ¶ 118).

3

motion to stay, (Dkt. No. 127).[2] Plaintiff opposes the motion to stay. (Dkt. No. 143). For the reasons that follow, the motion to stay is granted.[3]

## II.   BACKGROUND

Plaintiff, a participant in the Fund, a defined-benefit plan, alleges that beginning in 2014 and continuing to the present, Defendants breached their fiduciary duties under ERISA by "imprudently deploy[ing] and maintain[ing] the [Fund] assets in an extraordinar[ily] high risk, high cost asset allocation to chase a grossly excessive and unreasonable 8.5% 'actuarial return target,' as the Plan remained in dangerous and worsening financial condition." (Dkt. No. 1, ¶ 10). Plaintiff alleges that Horizon, as the Fund's actuary, "recklessly increased the actuarial return assumption from 8% to 8.5% . . . knowing the [Fund] would chase this unrealistic return assumption with extraordinary allocation of [Fund] assets to the riskiest asset classes." (*Id.* ¶ 11). Plaintiff alleges that Mekata used its position as the Fund's "nondiscretionary investment consultant to recommend itself for the position of the [Fund's] paid discretionary investment manager" and advised the Fund's Trustees (in its role as nondiscretionary investment consultant) that "the only way . . . to achieve the 'actuarial return target' was with . . . significantly overweighted allocations of [Fund] assets to the highest risk asset classes"—namely, Emerging Markets Equities ("EME") and Private Equity ("PE"). (*Id.* ¶ 12). Plaintiff alleges that this dual role was a conflict of interest and caused the fees the Fund paid to Mekata to "soar[] from $250,000 to $1.4 million annually." (*Id.*).

---

[2] The Fund Defendants, Mekata, and Horizon have all filed motions to dismiss. (Dkt. Nos. 102, 124, 125).

[3] The Fund Defendants requested oral argument on their motion to stay. (Dkt. No. 122-1, at 1). Such requests are "subject to the discretion of the presiding judge." N.D.N.Y. L.R. 7.1(a). The Fund Defendants and Plaintiff have briefed this motion extensively. (*See* Dkt. Nos. 122-1, 143, 156, 159, 162). Having reviewed the parties' thorough submissions, the Court finds oral argument unnecessary.

From 2010 to 2017, the Fund's "funded percentage steadily declined until the Department of Treasury approved extraordinary benefit cuts pursuant to the Multiemployer Pension Reform Act of 2014 ("MPRA")." (*Id.* ¶ 32). In January 2016, the Fund's actuary certified the Fund as being in "Critical in Declining" status under the MPRA, meaning it was projected to become insolvent and unable to pay benefits—in this case, by 2026. (*Id.* ¶ 43). "The MPRA permits a plan in 'critical and declining status to seek authorization from the Department of Treasury to [reduce] earned benefits to combat projected insolvency." (*Id.*). Beginning in August 2016, the Fund filed a series of applications under the MPRA for reduction of pension benefits. (*Id.* ¶ 44). In September 2017, the Department of Treasury approved the benefit reductions. (*Id.* ¶ 45). In October 2017, the Fund implemented the reductions: a 19% reduction for active participants and a 29% reduction for retired participants. (*Id.* ¶ 46).

Plaintiff alleges that during the class period, 2014 and continuing to present, the Fund Defendants, Mekata, and Horizon continued "to chase a grossly excessive and unreasonable 8.5% 'actuarial return target," as the Fund's "financial condition worsened." (*Id.* ¶ 47). Specifically, during the class period, the risky EME and PE investments constituted "more than 50% of the [Fund's] assets." (*Id.* ¶ 60). According to Plaintiff, the Fund "*lost approximately $31 million* in value on the EME assets" during the class period. (*Id.* ¶ 79). Plaintiff alleges that "the Trustees' and their advisors' 'significantly overweight' allocation of Plan assets to high risk illiquid alternatives investments has exposed the [Fund] to further risk of losses in the ongoing pandemic and accompanying financial crisis." (*Id.* ¶ 102). As an active participant, Plaintiff's "vested monthly pension benefit payments were cut and have continued to be cut by 19% each month since 2017." (Dkt. No. 140, at 32). Plaintiff seeks, inter alia, declaratory relief, restoration

5

of Fund losses resulting from breach of fiduciary duty, and other equitable and monetary relief. (Dkt. No. 1, ¶ 154).

## III. DISCUSSION

The Fund Defendants seek an order staying this action pending a determination by the PBGC on its pending application for special financial assistance to restore the reduced benefits, both retroactively and prospectively, to Fund participants, including Plaintiff. (Dkt. No. 122; *see* Dkt. No. 163 (notice of application)). On January 28, 2022, the Fund's Board of Trustees submitted an application, on behalf of the Fund, for special financial assistance with the PBGC under the ARPA. (Dkt. No. 163, at 1). The ARPA amends ERISA to add ERISA § 4262, 29 U.S.C. § 1432, which directs the PBGC to "provide special financial assistance to an eligible multiemployer plan," with no repayment obligation. PL 117-2, March 11, 2021, 135 Stat 4, § 9704(b). The Fund represents that as a plan that has "implemented benefit reductions pursuant to" MPRA, prior to March 11, 2021, it is eligible for special financial assistance, (Dkt. No. 156, at 6). *See* 29 C.F.R. § 4262.3 (stating that "a multiemployer plan is eligible for special financial assistance" if "[a] suspension of benefits has been approved with respect to the plan under section 305(e)(9) of ERISA as of March 11, 2021"). The Fund further represents that if its application is approved, the Fund will be required to restore benefits previously reduced under the MPRA, 26 U.S.C. §§ 431–32, 26 U.S.C. §§ 1084–85, both retroactively and prospectively, (*id.* at 2); *see* 29 C.F.R. § 4262.15 (requiring that "a plan with benefits that were suspended" must "[r]einstate any benefits that were suspended for participants" and "[m]ake payments equal to the amounts of benefits previously suspended to any participants"), and that it will be prohibited from applying for further benefit reductions, (*id.* at 8); *see* 29 C.F.R. § 4262.17(e) ("A plan that receives special financial assistance is not eligible to apply for a suspension of benefits under section 305(e)(9) of ERISA."). According to the applicable regulations, the PBGC has up

6

to 120 days to make a determination on an application. 29 U.S.C. § 4262.11(a) ("Within 120 days after . . . an . . . application for special assistance is . . . filed, PBGC will . . . [a]pprove the application and notify the plan sponsor of payment of special financial assistance . . . or . . . [d]eny the application.").

### A. Standard of Review

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Courts in the Second Circuit consider five factors when determining whether to grant a stay:

> (1) [T]he private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*Kennedy v. Aegis Media Americas, Inc.*, No. 1:20-cv-3624, 2021 WL 4077946, at *1, 2021 U.S. Dist. LEXIS 170294, at *3 (S.D.N.Y. Sept. 7, 2021) (quoting *Loftus v. Signpost Inc.*, 464 F. Supp. 3d 524, 526 (S.D.N.Y. 2020)).

### B. Analysis

The balance of the relevant factors weighs in favor of staying all proceedings pending a determination on the Fund Defendants' application for special financial assistance. Plaintiff undoubtedly has a strong interest in proceeding expeditiously with the present litigation. The Court recognizes that not only were Plaintiff's "vested pension benefits cut four years ago"—a loss that continues to the present day, but also that this case has been mired in procedural issues, including a transfer of venue from the Southern District of New York. *Carlisle v. Bd. of Trustees of Am. Fed'n of New York State Teamsters Conf. Pension & Ret. Fund*, No. 20-cv-8793, 2021

7

WL 1512702, at *1, 2021 U.S. Dist. LEXIS 73881, at *1 (S.D.N.Y. Apr. 16, 2021). However, if PBGC grants the Fund's application for special financial assistance, Plaintiff's benefits may be restored in their entirety. *See* ERISA § 4262(g) (providing that once approved "financial assistance issued by [PBGC] shall be effective on a date determined by [PBGC], but no later than 1 year after a plan's special financial assistance is approved"); ERISA § 4262(k)(1) (providing that once financial assistance is issued, the plan must reinstate previously reduced benefits "effective as of the first month in which the effective date for the special financial assistance occurs"). Such restoration may alter the facts relevant to the standing issue in this case, including whether Plaintiff can show the concrete injury necessary to establish constitutional standing. *See Thole v. U.S. Bank, N.A.*, 140 S. Ct. 1615, 1618–19 (2020) (finding that because the plaintiffs had "received all of their monthly payments so far, and the outcome of this suit would not affect their future benefit payments," they had no "concrete stake" in ERISA lawsuit for "alleged mismanagement of defined-benefit plan" seeking both monetary and injunctive relief, "including replacement of the plan's fiduciaries"). Although Plaintiff argues that even if the Fund receives special financial assistance, "there will be no repayment of prior MPRA benefit cuts for surviving spouses or other dependents of Plan participants," there is no indication that the absence of restoration of these benefits impacts Plaintiff in any manner or that he would have standing to pursue such claims if his claims were dismissed. *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 95 (2d Cir. 2018); *see Leonard v. Abbott Labs., Inc.*, No. 10-cv-4676, 2012 WL 764199, at *7, 2012 U.S. Dist. LEXIS 30608, at *18 (E.D.N.Y. Mar. 5, 2012) ("Generally, the dismissal of the named plaintiffs claims before a motion for class certification has been filed would result in the dismissal of the complaint" (citing *Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 76 (E.D.N.Y. 2008))).

Plaintiff correctly notes that "it remains uncertain and speculative whether" the Fund's application will be approved and in what amount." (Dkt. No. 143, at 5). Indeed, nothing the parties have submitted provides a basis for inferring the outcome of the Fund's application. Plaintiff further argues that even if he receives "a full recovery of . . . damages caused by the prior benefits cuts . . . [t]he maximum payments pursuant to ARPA will only provide [Fund] participants with payments equal to the amount of the MPRA benefit [c]uts," and will not fully compensate him for his injuries because the payments would not provide "*interest or investment returns.*" (*Id.*). Such an outcome, Plaintiff continues, is "tantamount to a decade-long interest-free loan" by participants to the Fund. (*Id.* at 6). But even if the Court denies the stay, it appears that the Fund's application will nevertheless proceed to a determination. Moreover, the resolution of the Fund's application may provide information helpful in resolving the existing standing issue, (*see* Dkt. Nos. 124-1, at 16–20; Dkt. No. 140, at 31–38), and may aid the Court addressing Plaintiff's arguments concerning, among other things, interest and investment returns. Thus, as Plaintiff's arguments do not suggest that a short delay in this case while the Fund's application is under consideration would be prejudicial, the Court concludes that the first factor weighs in favor of a stay. *See Kennedy*, 2021 WL 4077946, at *2, 2021 U.S. Dist. LEXIS 170294, at *4 (finding first factor weighed in favor of a stay to await the Supreme Court's decision on a "key issue" where that issue "could prove dispositive" to the case).

The remaining factors also weigh in favor of a stay. The private interests of all Defendants will be served by staying the litigation to "confirm that benefits have been restored in full . . . and that the harm pled in Plaintiff's complaint has been properly remediated before any significant determinations or undertakings are made in this case." (Dkt. No. 156, at 12). In addition, to the extent that the restoration of Plaintiff's benefits necessitates dismissal for lack of

standing, a brief stay while the application is pending, would enable Defendants "to avoid the significant burdens imposed by continued proceedings and the potential opening of discovery in this matter," which is a proposed class action. *Kennedy*, 2021 WL 4077946, at *3, 2021 U.S. Dist. LEXIS 170294, at *6; *see also id.* at *3, 2021 U.S. Dist. LEXIS 170294, at *6 (finding interest of the defendants weighed in favor of a stay where pending Supreme Court decision "could result in dismissal of the case" enabling the defendants to avoid "significant burdens" of continued litigation, noting "[t]his is particularly true given 'that the case is asserted as a class action" (citing *Loftus*, 464 F. Supp. 3d at 527).

While the parties have not specifically addressed the interests of third parties, the interest of the court and the public would be served by a stay; it would "promote the public and judicial 'interest in the efficient conduct of litigation,'" *Kennedy*, 2021 WL 4077946, at *3, 2021 U.S. Dist. LEXIS 170294, at *6 (citing *Loftus*, 464 F. Supp. 3d at 527), and the conservation of judicial resources. *Cf. Cent. States Se. & Sw. Areas Pension Fund v. Lakeville Transp., Inc.*, No. 18-cv-1863, 2021 WL 1661239, at *1–2, 2021 U.S. Dist. LEXIS 80836, at *3–7 (D. Minn. Apr. 28, 2021) (granting 120-day stay where the defendant argued that "the forthcoming regulations for the ARPA" may "result in Plaintiffs receiving a lump-sum payment from the government in an amount equal to its pension liabilities" concluding that a brief stay was warranted where there was little if any prejudice to the plaintiffs, "the implementing regulations may clarify the issues the parties will litigate," and a "brief stay" might avoid "the potential hardship for the Defendants of incurring additional expenses" in litigating the case through remaining discovery); *see also* Transcript of Oral Decision at 6–7, *King v United States*, No. 18-1115c (Fed. Cl. Aug. 30, 2021) (granting motion to stay observing that "the full extent of the Plaintiffs' injuries cannot be known unless and until the Fund applies and unless and until that application is resolved by

the PBGC"), ECF No. 125. Moreover, any stay would be limited in duration, reducing any prejudice to Plaintiff and any other parties. The Court has considered all of Plaintiff's remaining arguments and finds they do not warrant a different result. Accordingly, the Fund Defendants' motion to stay this action is granted.

For all these reasons, and because consideration of all Defendants' motions simultaneously not only conserves judicial resources but ensures a consistent outcome, the Court declines Horizon's request, (Dkt. No. 127), that the Court resolve its motion to dismiss prior to the issuance of a stay.

## IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** that the Fund Defendants' motion to stay this action (Dkt. No. 122) is **GRANTED**; and it is further

**ORDERED** that the Clerk is respectfully directed to stay this action for 120 days or 14 days after the Fund has received a determination from the PBGC, whichever is sooner; and it is further

**ORDERED** that the parties file a joint status report within 90 days of this Memorandum-Decision and Order, or within 7 days of any determination by PBGC, whichever is sooner.

**IT IS SO ORDERED.**

Dated: February 11, 2022
Syracuse, New York

Brenda K. Sannes
U.S. District Judge