# Morgan Lewis

**Brian T. Ortelere**
Partner
+1.212.309.6850
brian.ortelere@morganlewis.com

August 4, 2023

**VIA ECF**

Hon. Brenda K. Sannes
U.S. District Court for the Northern District of New York
Federal Building and U.S. Courthouse
P.O. Box 7336
Syracuse, NY 13261-7336

Re: *Carlisle v. Bd. of Trs. of Am. Fed'n of N.Y. State Teamsters Conf. Pension & Ret. Fund*, Civil Action No. 8:21-cv-00455-BKS-DJS

Dear Judge Sannes:

We submit this letter brief on behalf of the Fund Defendants[1] in response to the Court's request for additional briefing with respect to Plaintiff's lack of statutory standing to pursue his claims. Specifically, this letter brief addresses the Court's questions concerning the entities or individuals that *are* permitted to challenge a suspension of benefits pursuant to the Multiemployer Pension Reform Act ("MPRA"), 29 U.S.C. §§ 431-432, 29 U.S.C. §§ 1084-1085, as contemplated by 29 U.S.C. § 1085(e)(9)(I).

As the Fund Defendants explained in their prior briefing, Plaintiff lacks statutory standing to pursue his claims under ERISA because 29 U.S.C. § 1085(e)(9)(I)(iii) expressly provides that "[a] participant or beneficiary affected by a benefit suspension under this paragraph shall not have a cause of action under this subchapter." *See* ECF 124, 155, 161. As the Fund Defendants also addressed in prior briefing, use of the word "title" in Public Law 113-235 does not change this outcome. *See* ECF 124, 155, 161. Plaintiff does not have a statutory cause of action under the civil

---

[1] The Fund Defendants include the Board of Trustees of the New York State Teamsters Conference Pension and Retirement Fund (the "Board"); John Bulgaro; Brian Hammond; Paul Markwitz; George Harrigan; Mark May; Michael Scalzo, Sr.; Robert Schaeffer; Mark Gladfelter; Samuel Pilger; Daniel Schmidt; and Tom Ventura.

**Morgan, Lewis & Bockius LLP**

101 Park Avenue
New York, NY  10178-0060     ☏ +1.212.309.6000
United States                               ⎙ +1.212.309.6001

Hon. Brenda K. Sannes
Page 2

enforcement provisions of Title I of ERISA[2] to challenge the Fund Defendants' actions. This is both clear from the statutory language and consistent with the overall intent and purpose of MPRA.

Congress did not, however, leave Plaintiff and other participants or beneficiaries affected by a MPRA benefit suspension without recourse. Instead, Congress preserved the ability of a participant or beneficiary affected by a benefit suspension under MPRA to challenge the Secretary of Treasury's decision, in consultation with the Pension Benefit Guaranty Corporation ("PBGC") and the Secretary of Labor, to approve a suspension of benefits through procedures established under the Administrative Procedure Act ("APA").[3] In 29 U.S.C. § 1085(e)(9)(I)(ii)(II)(aa), Congress explicitly referenced the APA's judicial review process, stating that "[a] court shall review an action challenging the suspension of benefits under this paragraph in accordance with section 706 of Title 5." Section 706 of Title 5 (5 U.S.C. § 706) describes the review process for a challenge to an agency action pursuant to 5 U.S.C. § 702.

This result is consistent with Congress' intent in enacting MPRA, providing a mechanism through which financially troubled multiemployer plans can seek approval to reduce benefit levels by the amount necessary to avoid insolvency. Indeed, MPRA was one of a series of tools – beginning with the Pension Protection Act of 2006[4] – developed by Congress to help prevent multiemployer pension plans from going insolvent. MPRA is only effective, however, to the extent plan sponsors like the Fund Defendants apply for benefit suspensions. To that end, MPRA establishes a rigorous application and approval process overseen by three separate federal agencies and requires a vote of the affected participants and beneficiaries. MPRA also insulates the Fund and its fiduciaries and sponsors[5] from actions by affected participants and beneficiaries seeking to impose liability under ERISA related to the implementation of those approved benefit suspensions, to eliminate the risk of civil litigation that otherwise would serve as a significant disincentive for plan sponsors to apply for MPRA suspensions. It follows then that any actions by participants and beneficiaries for relief related to a suspension of benefits must be directed, not at the Fund, its fiduciaries, or its sponsors, but at the government agency providing the final approval for the benefit suspensions. The

---

[2] Title I of ERISA includes the causes of action that can be brought by participants or beneficiaries for benefits (29 U.S.C. § 1132(a)(1)(B)) and for breaches of fiduciary duty (29 U.S.C. §§ 1132(a)(2) and (a)(3)).

[3] 29 U.S.C. § 1085(e)(9)(G)(i) ("The plan sponsor of a plan in critical and declining status for a plan year that seeks to suspend benefits must submit an application to the Secretary of the Treasury for approval of the suspensions of benefits. If the plan sponsor submits an application for approval of the suspensions, the Secretary of the Treasury, in consultation with the Pension Benefit Guaranty Corporation and the Secretary of Labor, shall approve the application upon finding that the plan is eligible for the suspensions and has satisfied the criteria of subparagraphs (C), (D), (E), and (F).").

[4] Pension Protection Act of 2006, Pub. L. 109-280, 120 Stat. 780 (codified as amended in scattered sections of 26 and 29 U.S.C.).

[5] 29 U.S.C. § 1002(16)(B)(iii) provides that the plan sponsor of a multiemployer plan is the "joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan."

Hon. Brenda K. Sannes
Page 3

mechanism for such a challenge is the APA, not ERISA. As discussed in further detail below, a March 2015 report from the Joint Committee on Taxation ("Committee") confirms that Congress intended to preclude the causes of action that Plaintiff asserts in this case. Ex. 1, STAFF OF JOINT COMMITTEE ON TAXATION, 113TH CONG., GENERAL EXPLANATION OF TAX LEGISLATION ENACTED IN THE 113TH CONGRESS (Comm. Print 2015).[6]

I. **A Participant or Beneficiary Affected by a Benefit Suspension May Bring a Claim to Challenge the Approval of A MPRA Benefit Suspension under the APA, Not ERISA.**

A. **MPRA Suspensions are Subject to Significant Federal Government Oversight and Approval.**

MPRA creates an elaborate statutory scheme permitting benefit suspensions only after multiple layers of review and approval, including three independent federal government agencies and a vote by the impacted participants. As an initial matter, MPRA requires the plan sponsor (*i.e.*, the Fund's Board of Trustees) to conclude that the pension plan will become insolvent unless benefits are reduced, even though "all reasonable measures to avoid insolvency have been taken." 29 U.S.C. § 1085(e)(9)(C)(ii). MPRA then requires the plan actuary to certify that the reductions are necessary for the plan to remain solvent and that suspending benefits will preserve the plan's ability to pay future benefits. *Id.* § 1085(e)(9)(C)(i). MPRA also requires the plan sponsor to demonstrate to the Treasury Department that the proposed benefit reductions satisfy the statutory requirements. *Id.* § 1085(e)(9)(D).

Other plan sponsor requirements include (1) selecting a "retiree representative"—a participant in pay status—to "advocate for the interests of the retired and deferred vested participants and beneficiaries" throughout the application process, *id.* § 1085(e)(9)(B)(v)(I); and (2) providing notice of the application to suspend benefits to all plan participants and contributing employers. *Id.* § 1085(e)(9)(F).

Following receipt of the application, MPRA requires the Treasury Department to publish a notice in the Federal Register soliciting comments from contributing employers, employee organizations, participants and "other interested parties." *Id.* § 1085(e)(9)(G)(ii). MPRA also requires Treasury to administer a vote of participants and beneficiaries of the plan regarding the proposed benefit reductions. *Id.* § 1085(e)(9)(H). If a majority of participants and beneficiaries vote to reject the reductions, the reductions will go into effect only if the Secretary of the Treasury determines that the pension plan is a "systematically important plan." *Id.* § 1085(e)(9)(H)(ii), (v). Throughout the process, Treasury must consult with the Secretary of Labor and the PBGC with respect to the decision to approve (or reject) a MPRA application. *Id.* § 1085(e)(9)(G)(ii), (iii), (v).

Only after all the above steps have been completed and the plan's application is approved can the plan sponsor implement the benefit reductions.

---

[6] Exhibit One includes relevant excerpts of this report.

Hon. Brenda K. Sannes
Page 4

### B. MPRA Permits Challenges to Approved Benefits Suspensions under the APA, but not under ERISA.

MPRA at 29 U.S.C. § 1085(e)(9)(I)(ii)(I) provides that "[a]n action challenging a suspension of benefits under this paragraph may only be brought following a final authorization to suspend by the Secretary of the Treasury, in consultation with the Pension Benefit Guaranty Corporation and the Secretary of Labor[.]" This section further provides at 29 U.S.C. § 1085(e)(9)(I)(ii)(II)(aa) that such an action shall be reviewed in accordance with the procedures set forth at 5 U.S.C. § 706. The procedures at 5 U.S.C. § 706 are part of the APA and govern judicial review of actions challenging final agency action. This is consistent with the robust process though which MPRA suspension are sought and ultimately approved by the Treasury Department.

The APA provides a right of review to individuals experiencing a legal wrong because of agency action or who are adversely affected by agency action. 5 U.S.C. § 702. *See also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020) ("The APA establishes a basic presumption of judicial review for one suffering legal wrong because of agency action.") (internal quotations omitted). Agency actions that are reviewable include "final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 704. *See, e.g*, *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (APA review available where no adequate alternative to challenge Army Corps of Engineer's revision of jurisdictional determination that property contained waters of the United States subject to the Clean Water Act's permitting requirements); *Sackett v. E.P.A.*, 566 U.S. 120, 127 (2012) (APA review available where not foreclosed by relevant statute itself). Agency action is considered final for the purposes of review under the APA where: 1) the action marks the consummation of the agency's decision-making process; and 2) the action is one by which rights or obligations have been determined or from which legal consequences will flow. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

MPRA permits a participant or beneficiary adversely affected by a suspension of benefits to challenge the "final authorization" of that reduction by Treasury in court under the APA and pursuant to the procedures provided therein. *See* 29 U.S.C. § 1085(e)(9)(I)(ii)(I), (II). Because the determination by Treasury is one marking the conclusion of the agency process for suspending benefits and is an action from which legal consequences will flow, it is a final agency action for purposes of judicial review under the APA. *See* 29 U.S.C. § 1085(e)(9)(G)(iii) ("Approval or denial by the Secretary of the Treasury of an application shall be treated as a final agency action for purposes of section 704 of title 5."). Moreover, there is no other adequate remedy in court for a participant or beneficiary to challenge the benefit suspension, as MPRA expressly restricts the ability of an affected participant or beneficiary to bring an action under ERISA for relief related to the benefit suspensions. Thus, a participant or beneficiary affected by a final decision to suspend benefits by Treasury may challenge that decision pursuant to the APA as long as any such cause of action is filed within one year from the earliest date a plaintiff should have acquired knowledge of the benefit reduction. 29 U.S.C. § 1085(e)(9)(I)(iv).

A March 2015 report from the Joint Committee on Taxation drives home this point. That report, titled a "General Explanation of Tax Legislation Enacted in the 113th Congress," includes a section that discusses "Remediation Measures for Deeply Troubled Plans," *i.e.*, MPRA. Ex. 1 at 89.

Hon. Brenda K. Sannes
Page 5

Following a detailed discussion of the administrative process for suspending benefits is a subsection titled "Appeal of Decisions." *Id.* at 103. That section states in relevant part:

> For purposes of judicial review of agency action, approval or denial by Treasury of an application is treated as a final agency action. . . . An action by a plan sponsor challenging the denial of an application for suspension of benefits by Treasury may only be brought following the denial. An action challenging a suspension of benefits may only be brought following a final authorization to suspend by Treasury. ***A participant or beneficiary affected by a benefit suspension does not have a cause of action under the Code or Title I of ERISA.***

*Id.* (emphasis added). The Committee then confirms in a footnote appended to the bolded language above that, when it enacted 29 U.S.C. § 1085(e)(9)(I)(iii), Congress intended to strip participants and beneficiaries of any right to bring suit under ERISA: ***A participant or beneficiary might otherwise have a cause of action against the plan sponsor under ERISA section 502 with respect to the benefit suspension.*** *Id.* n.231 (emphasis added). Finally, the Committee explains that "[a] court review of an action challenging a suspension of benefits is to be done in accordance with the rules for judicial review of agency actions." *Id.* at 103.

The Fund Defendants are not alone in construing MPRA as providing for judicial review under the APA. In fact, during oral argument in the *King v. U.S.* litigation, Case No. 18-1115C (Fed. Cl.), Judge Hertling asked plaintiffs why they had not pursued an action in district court under the APA to challenge Treasury's approval of the same benefit reductions at issue in this case. Nov. 10, 2021, Transcript ("King Transcript"), King Dkt No. 138 at 75:22-76:8. While plaintiffs argued there was no availability for judicial review under the APA, the Government disagreed. King Transcript at 76:9-21; 99:19-100:9. According to the Government, an APA action was an available method to challenge the benefit reductions and an additional protection built into MPRA. King Transcript at 99:19-100:9. In the briefing preceding that argument, the Government also acknowledged that MPRA "precludes plan participants and beneficiaries from asserting a cause of action under ERISA's civil enforcement provisions." King Dkt No. 126, p. 22. Thus, the Government expressly endorsed the same position the Fund Defendants have advanced in this case – the Plaintiff has no statutory standing to bring his claims under Title I of ERISA.

### C. Shielding Plan Sponsors from Liability under ERISA for Implementing Approved MPRA Suspensions is Consistent with Congressional Intent of Providing a Viable Means for Avoiding Insolvency

This scheme for reviewing and approving MPRA applications and then seeking review of approved benefit suspensions makes sense and aligns with Congress' goals in enacting MPRA. In particular, it provides for judicial review of Treasury's approval of the benefit reduction, protecting participants and beneficiaries with a day in court to challenge the suspensions, if appropriate. At the same time, it insulates the plan and the plan fiduciaries and sponsors from potentially harmful and expensive lawsuits brought by affected participants and beneficiaries over the implementation of approved benefit suspensions.

Hon. Brenda K. Sannes
Page 6

MPRA is one part of Congress' concerted effort over the last two decades to ensure the solvency of multiemployer pension plans and protect the future benefits of hundreds of thousands of participants and beneficiaries. Subjecting multiemployer plan fiduciaries to personal liability under ERISA for a decision to implement Congressionally authorized and agency-approved benefit suspensions would deter those fiduciaries from taking steps to ensure the future solvency of their plans, nullifying Congressional intent. To eliminate this risk, 29 U.S.C. § 1085(e)(9)(I)(iii) broadly bars causes of action under ERISA's civil enforcement provisions by participants who have been adversely "*affected by* a benefit suspension." (emphasis added). *See also United States v. Hayter Oil Co. of Greeneville, Tenn.*, 51 F.3d 1265, 1272–73 (6th Cir. 1995) (holding that the phrase "affected by" is "very broad"); *United States v. SKW Metals & Alloys, Inc.,* 195 F.3d 83, 90 (2d Cir. 1999) (following *Hayter Oil*); ECF 196 at 28:22-25 (explaining that Plaintiff's theory of standing is that he "got [his] benefits cut"). Instead, any challenge to a suspension of benefits must be filed against the federal government agency providing final approval for the suspension. The APA provides the mechanism for such a challenge.

## II. MPRA Leaves Open the Possibility for Other Actors or Entities, Besides Participants or Beneficiaries, to Bring ERISA Claims Related to Benefit Suspensions.

While MPRA expressly precludes a participant or beneficiary from bringing suit under ERISA, it does not foreclose the possibility of other individuals or entities challenging benefit suspensions through such actions. For example, the Secretary of Labor or one or more of the plan's fiduciaries would have statutory standing to sue under Title I of ERISA if it or they disagreed with the decision of the full board of trustees to apply for the benefit suspensions or if it or they believed that the suspensions were implemented incorrectly (i.e., inconsistent with the approval). 29 U.S.C. § 1132(a)(2) provides that "the Secretary, or . . . a fiduciary" may sue for breach of fiduciary duty under ERISA. 29 U.S.C. § 1132(a)(5) also permits the Secretary to sue "(A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter." MPRA only prohibits claims brought by "a participant or beneficiary affected by a benefit suspension under this paragraph" and does nothing to limit the ability of the Secretary or a fiduciary to bring a lawsuit. 29 U.S.C. § 1085(e)(9)(I)(iii).

We thank the Court for its continued time and attention to this matter.

Respectfully submitted,

**s/ Brian T. Ortelere**

Brian T. Ortelere (N.D.N.Y. No. 512367)
Sara E. DeStefano (N.D.N.Y. No. 702729)
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001
brian.ortelere@morganlewis.com

Hon. Brenda K. Sannes
Page 7

sara.destefano@morganlewis.com

Daniel P. Bordoni (pro hac vice)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue N.W.
Washington, DC 20004
Telephone: 202-739-5249
daniel.bordoni@morganlewis.co

Sean McMahan (pro hac vice)
MORGAN, LEWIS & BOCKIUS LLP
1717 Main Street, Suite 3200
Dallas, TX 75201-7347
Telephone: 214-466-4102
sean.mcmahan@morganlewis.com

*Attorneys for the Fund Defendants*

cc:     Counsel of Record (via ECF)